307 Ga. 882
FINAL COPY

S19A1257.  WHITE v. THE STATE.

BOGGS, Justice.

Lazarus Jacobe White was convicted of malice murder and another crime in connection with the 2012 stabbing death of Terry Bell. He appeals, asserting error in the trial court's exclusion of testimony regarding Bell's alleged act of violence against a third party and three instances of ineffective assistance of trial counsel. For the reasons stated below, we affirm.[1]

---

[1] The crimes occurred in the early morning of June 9, 2012. On October 3, 2012, a Spalding County grand jury indicted White for felony murder, malice murder, aggravated assault, kidnapping, theft by taking of a motor vehicle, and possession of a knife during the commission of a crime. After the alleged victim of the kidnapping and auto theft informed police that he and his car were not taken against his will, the State dismissed those charges. After a jury trial from April 1 to April 4, 2013, White was found guilty of all remaining counts. The trial court sentenced White to serve life in prison without the possibility of parole for malice murder, and five years consecutive on the possession charge. The trial court merged the aggravated assault guilty verdict into the malice murder conviction, and the felony murder count was vacated by operation of law. On April 17, 2013, White's trial counsel filed a motion for new trial, which was amended by new counsel on August 11, 2017 and March 17, 2018. On November 28, 2018, after a hearing, the trial court denied the motion. White filed a timely notice of appeal on December 26, 2018, and the case was docketed in this Court for the August 2019 term and submitted for decision on the briefs.

1. Construed in the light most favorable to the jury's verdicts, the evidence showed that on the evening of June 8, 2012, White was visiting Bell's house in Griffin. White, White's girlfriend Angela Pope, Bell, Bell's girlfriend Monique Goodman, and Bell's roommate Christopher Quidort were cooking out and drinking, and some, including White, were using drugs. Goodman testified that during the evening, White started "looking at [her] crazy" and said, "I'm gonna end up going back to prison. I'm gonna end up taking me somebody." White also took out a knife and started "flipping it" around.

Early the next morning, around 4:00 or 5:00 a.m., White said that he wanted to go get some cigarettes. Bell and Goodman went to their bedroom, undressed, and got into bed. White and Quidort left, with White driving Quidort's car, leaving Pope behind watching television in the living room. As the car pulled out of the driveway, White told Quidort that he "wanted a cigarette for the ride," and White went back into the house.

Shortly after Pope asked Bell and Goodman for a cigarette and

entered their bedroom to obtain it, White "burst into the bedroom," exclaiming, "y'all two think I'm damn crazy." Bell, who was naked except for a sock and a wristwatch, asked White why he was being disrespectful by bursting into the bedroom. White then suddenly attacked Bell, punching him. Pope and Goodman tried to separate White and Bell, but White grabbed Bell by the neck, pushed him back onto the bed, and then stabbed him. White fled, and the women attempted to stop Bell's bleeding and called 911. The police arrived within a few minutes and attempted to render aid to Bell, who was bleeding profusely. Emergency and fire personnel arrived shortly afterward but were unable to revive Bell, who had four incised wounds to his head and chest as well as a stab wound to the left side of his neck which pierced his carotid artery, causing severe blood loss and death.

After White returned to Quidort's car, he appeared agitated and began driving erratically. When Quidort noticed that White "had blood on him," White claimed that "he got in a fight with his girlfriend," Pope. White drove around back roads until Quidort,

feeling uncomfortable, persuaded White to stop. White pulled over and took Quidort's phone, money, and drugs. White then got Bell's work clothes out of the car trunk, put them on, and left alone on foot. Quidort saw "[b]lood everywhere" on the driver's side of the car where White had been sitting.

A police investigator found a blood-covered knife by the side of Bell and Goodman's bed. Goodman identified that knife as the one that White used to stab and cut Bell, and testified that it was the same knife White had displayed earlier in the evening. Quidort testified that Bell usually carried a knife, but that Bell did not have it that evening because he left it in Quidort's car. Goodman testified that she did not find any other knife in the bedroom. When White turned himself in several days later, he did not appear to have any injuries other than some "old scratches" on his neck and a more recent scratch on his shin.

Though White has not challenged the sufficiency of the evidence to support his convictions, as is this Court's practice in murder cases, we have reviewed the record to determine the legal

4

sufficiency of the evidence. We conclude that the evidence summarized above was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that White was guilty of the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (99 SCt 2781, 61 LE2d 560) (1979).

2. White asserts that the trial court erred by barring evidence that Bell was involved in an altercation with a third party on the evening before the killing. We review that ruling for clear abuse of discretion. See *Jones v. State*, 299 Ga. 377, 383 (4) (788 SE2d 477) (2016).

Shortly before trial, White filed a "Notice of Defendant's Intent to Introduce Evidence of Violent Act Against a Third Party." White asserted that the day before Bell was stabbed, Bell threatened a man named Frank with a knife, and that testimony would be elicited "only to show a specific act of violence against a third party in support of Mr. White's claim of self-defense." After jury selection, the trial court took up the matter. White contended the evidence was admissible "only just to support his claim of self-defense later on in

the evening. And that's the only reason that — that we would introduce it." While White asserted that Quidort and Goodman were present when the confrontation with Frank occurred, the prosecutor, after questioning the State's witnesses, including Quidort and Goodman, stated in his place that no one could testify to a man named Frank or an argument the night before. The prosecutor further stated that the only purpose for White's testimony regarding Bell "would be to show [White's] state of mind. I mean, it is very narrow . . . . It can't go into [Bell's] character, his propensity for violence, none of that. He can't get into any of that. [White] can say that the day before, he saw [Bell] with a knife." White's counsel responded, "Yeah. And that's not a problem. I mean . . . I recognized that . . . that's its purpose. And it is very limited. So there's not a problem there." After further discussion, White took the stand.

At this hearing on the third-party incident, White testified that he never had possession of a knife, and that both Bell and Goodman suddenly and without warning attacked him, and that Goodman swung an "object" at him that he believed was Bell's knife. All three

6

fell on the bed, and Bell was stabbed, although White did not know where Bell was wounded. He added, "I seen the weapon and who pulled it, it was Monique Goodman, it was by her foot." After this testimony, the State objected to admission of the incident with Frank because White had testified that "Monique [Goodman] did it, not [White]." The trial court tentatively concluded that the evidence was not relevant "at this point in time" because White had shown no evidence of self-defense.[2]

The next day, before opening statements, the issue was briefly revisited, and White's counsel stated that "we are not proceeding on a self-defense claim." The trial court rejected White's counsel's argument that the evidence could still be applied to a claim of accident, but allowed White's counsel to present evidence that Bell had a knife in his possession earlier in the day, without going "into the details of the act of violence against a third-party." In his cross-

---

[2] To the extent that the trial court's remarks suggested that a defendant must admit the act charged before interposing an affirmative defense, this Court recently rejected that theory in *McClure v. State*, 306 Ga. 856, 857 (834 SE2d 96) (2019).

7

examination of Goodman, White brought out the fact that Bell owned a knife, and that Goodman told the police that Bell had a knife earlier in the day. White, however, did not testify at trial, did not present any evidence, and did not request jury instructions on accident, justification, or self-defense.

White's trial took place in April 2013, and the current Evidence Code therefore applies. Admissibility of evidence of a victim's character is now governed by OCGA §§ 24-4-404 (a) (2) and 24-4-405 (a), which generally limit evidence of a victim's character to reputation or opinion and not specific bad acts. See *Mohamud v. State*, 297 Ga. 532, 535-536 (3) (773 SE2d 755) (2015). The former exception to the general rule created by *Chandler v. State*, 261 Ga. 402, 407 (3) (c) (405 SE2d 669) (1991), allowing evidence of specific acts of violence by a victim against third persons when a defendant claimed a justification defense, "is no longer viable under Georgia's new Evidence Code." (Citation omitted.) *Clark v. State*, 299 Ga. 552, 556 (2) (c) n.5 (787 SE2d 212) (2016). In *Mohamud*, this Court noted, but did not address, a commentator's suggestion of "the possibility

8

of an exception to this rule which would allow specific acts of evidence of a victim's violent disposition of which the defendant had personal knowledge to show the defendant's state of mind." (Punctuation omitted.) 297 Ga. at 536 (3) n.2, citing Jack Goger, Daniel's Georgia Handbook on Criminal Evidence § 4:42 (2014).[3]

Here, as in *Mohamud*, we need not address that question. As the trial began, White's counsel expressly stated that he sought to admit evidence of the incident with Frank solely to show White's state of mind "to support [White's] claim of self-defense later on in the evening. And that's the only reason that — that we would introduce it." The trial court's ruling was tentative, noting that White had presented no evidence of self-defense "at this point in time," but might in the future. But White never asserted any claim

---

[3] That treatise now reads:

Georgia courts could allow specific acts evidence of a victim's violent disposition of which the defendant had personal knowledge to show the defendant's state of mind. Several courts have admitted such evidence on the theory that it helps establish an element of the defense of justification, namely the defendant's reasonable belief that the use of force was necessary.

Ben W. Studdard, Daniel's Georgia Handbook on Criminal Evidence § 4:61 (2019).

of self-defense and presented no evidence, and the State likewise presented no evidence that could support a claim of self-defense. Nor did White request jury instructions on justification or self-defense. The alleged earlier incident involving Bell and a third person therefore was irrelevant to any issue presented at trial, and the trial court did not abuse its discretion in excluding it. See generally OCGA § 24-4-401.

3. White alleges three instances of ineffective assistance of trial counsel. To prevail on his claim of ineffective assistance, White must prove both that the performance of his lawyer was professionally deficient and that he was prejudiced by this deficient performance. See *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To prove deficient performance, White must show that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." *Romer v. State*, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013). To prove prejudice, White "must show that there is a reasonable probability that, but for counsel's

10

unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U. S. at 694 (III) (B). "This burden is a heavy one. [Cit.]" *Young v. State*, 305 Ga. 92, 97 (5) (823 SE2d 774) (2019). And if an appellant fails to show either deficiency or prejudice, this Court need not examine the other prong of the *Strickland* test. See *Palmer v. State*, 303 Ga. 810, 816 (IV) (814 SE2d 718) (2018).

(a) White first alleges that his trial counsel was professionally deficient in failing to locate and secure the attendance of Frank, the alleged participant in the altercation with Bell the day before the stabbing. But White has not demonstrated a reasonable probability that the result of the trial would have changed, but for his trial counsel's failure to secure Frank's attendance at trial. Neither White nor the State presented any evidence at trial to support a claim of self-defense. Therefore, as we note in Division 2, White has failed to show how the proposed testimony of Frank could have been relevant to any issue at trial and accordingly has not shown a reasonable

11

probability that the outcome of his trial would have changed.[4]

(b) Relying upon *Zamora v. State*, 291 Ga. 512 (731 SE2d 658) (2012), White contends that his trial counsel was ineffective in failing to preserve his right to be present for bench conferences. To be sure, White had a "right under the Georgia Constitution to be present during all critical stages of the criminal proceeding against him." Id. at 517 (7) (b). A bench conference *could be* a critical stage of a criminal proceeding, depending upon the subject matter of the conference. See *Brewner v. State*, 302 Ga. 6, 10 (II) (804 SE2d 94) (2017). But, as this Court also observed in *Zamora*,

> [a] defendant may personally waive his right to be present at a stage in the trial, or counsel may waive this right for the defendant. . . . [I]n order for the waiver of counsel to be binding on the defendant, it must be made in his presence or by his express authority, or be subsequently acquiesced in by him.

(Citations and punctuation omitted.) 291 Ga. at 519 (7) (c). See also *Smith v. State*, 298 Ga. 406, 409-410 (2) (782 SE2d 269) (2016).

---

[4] At the hearing on White's motion for new trial, it appeared that White's family and friends, White's appellate counsel, and the prosecutor had been unable to locate Frank.

As trial began with White present, the trial court noted that White had requested to be present at bench conferences, and stated that its customary practice was to excuse the jury before allowing the defendant to approach the bench for conferences. The trial court then asked White's counsel, "Would you take time to explain that so we can get Mr. White on the record understanding that." After counsel conferred with White, the following exchange took place:

> DEFENSE COUNSEL: Your Honor, on discussion with Mr. White, he said that he would waive his presence at any bench conferences —
> COURT: Is that your decision, Mr. White?
> DEFENDANT: Yes, sir.
> COURT: All right. Thank you.

Thus, the record shows that White clearly waived his right to be present at bench conferences after consultation with counsel. As such, trial counsel was not ineffective in failing to preserve a right that White affirmatively waived. See generally *Hampton v. State*, 282 Ga. 490, 492 (2) (a) (651 SE2d 698) (2007) (trial counsel not ineffective in failing to object to trial court interviewing jurors outside defendant's presence because defendant "personally and

13

affirmatively waived his right to be present.").

(c) Finally, White asserts that his trial counsel was professionally deficient in failing to move for a mistrial when his character was placed in evidence by Goodman's testimony regarding White's exclamation that he would "end up going back to prison. I'm gonna end up taking me somebody." White's counsel immediately objected, and at a bench conference, the State argued that the exclamation was evidence of White's state of mind, further noting that White intended to testify, and in that event the State intended to impeach White with his prior convictions. White's trial counsel acknowledged White's criminal record and that, if White took the stand, "at that point in time, it may be appropriate." He nevertheless objected that, at that time in the trial, no basis had been shown for the statement's admissibility. The State offered to "move on" and to instruct the witness "not to talk about that anymore," and the trial court observed that, "assuming the Defendant takes the stand, then you could, obviously, bring [Goodman] back in rebuttal." When asked if he had "anything else," White's trial counsel responded,

14

"Nothing else," and the State's examination continued.

In denying White's motion for new trial, the trial court found that the reference to prison generally would be considered character evidence, but that it was relevant to White's motive and intent to commit the crimes at issue. In addition, the requirements of OCGA § 24-4-404 (b) do not apply to "intrinsic evidence," which arises from the same transaction as the charged offense, completes the story of the crime, or is "inextricably intertwined" with the evidence of the offense. See *Williams v. State*, 302 Ga. 474, 485 (IV) (d) (807 SE2d 350) (2017) (trial counsel not ineffective because reasonable attorney could conclude that "intrinsic act" evidence was admissible and objection would be futile).

> Evidence of other acts is inextricably intertwined with the evidence regarding the charged offense if it forms an integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted. And this sort of intrinsic evidence remains admissible even if it incidentally places the defendant's character at issue.

(Citations and punctuation omitted.) Id. at 486 (IV) (d). White's behavior a few hours before the killing, especially in brandishing the

15

murder weapon while expressing to Goodman an intent to "take" somebody despite the risk of prison, was integral to Goodman's account of the events leading up to the killing and was inextricably intertwined with the relevant evidence. "The failure to make a meritless motion or objection does not provide a basis upon which to find ineffective assistance of counsel." (Citation and punctuation omitted.) *Lupoe v. State*, 300 Ga. 233, 246 (8) (794 SE2d 67) (2016). White therefore has failed to demonstrate ineffective assistance of counsel.

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 10, 2020.
Murder. Spalding Superior Court. Before Judge Sams.
*Brown & Gill, Angela B. Dillon*, for appellant.
*Benjamin D. Coker, District Attorney, E. Morgan Kendrick, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Vanessa T. Sassano,*

*Assistant Attorney General*, for appellee.