308 Ga. 582
FINAL COPY

S20A0007.  EVANS v. THE STATE.

MCMILLIAN, Justice.

Appellant Jimmy Dale Evans appeals his convictions for murder and other crimes related to the deaths of Tavoris Antoine Calhoun and Dezmon Devonshae Thomas.[1] Evans argues that

---

[1] Calhoun and Thomas were killed on the night of October 18-19, 2006. On August 7, 2007, an Evans County grand jury indicted Evans on the following 16 counts: (1) malice murder (Calhoun); (2) malice murder (Thomas); (3) felony murder (Calhoun); (4) felony murder (Thomas); (5) aggravated assault (Calhoun); (6) aggravated assault (Thomas); (7) armed robbery (Calhoun); (8) entering an automobile; (9) theft by taking (firearm); (10) theft by taking (motor vehicle); (11) possession of a firearm during the commission of a felony; (12) concealing the death of another (Calhoun); (13) concealing the death of another (Thomas); (14) possession of cocaine; (15) possession and use of drug-related objects; and (16) possession of marijuana. After a trial from June 24 to 27, 2008, the jury found Evans guilty on all charges. The trial court sentenced Evans to life in prison for each count of malice murder, with the sentence under Count 2 to run concurrently with Count 1. The trial court further imposed a sentence of life in prison for armed robbery; five years for entering an automobile; ten years for each count of theft by taking; ten years for each count of concealing the death of another; fifteen years for possession of cocaine; twelve months for possession and use of drug-related objects; and twelve months for possession of marijuana, all to run concurrently with Count 1. The trial court also sentenced Evans to five years for possession of a firearm during the commission of a felony to run consecutively to Count 1. The felony murder counts were vacated as a matter of law, and the aggravated assault counts merged with the counts of malice murder. Evans moved for a new trial on July 1, 2008, and twice amended the motion, on May 15, 2012, and on

because he was visibly intoxicated at the time he made statements to law enforcement and consented to a search of his home and person, the statements and consent were involuntarily given and the trial court should have granted his motion for new trial on this ground. Relatedly, Evans argues that his trial counsel was ineffective for failing to file a motion to suppress at trial on the same basis. Because Evans has failed to show error or ineffective assistance of counsel, we affirm.

Viewed in the light most favorable to the verdicts, the evidence at trial showed that late on the night of October 18, 2006, a husband and wife, who lived next door to Evans, heard gunshots, and then saw someone dragging what appeared to be a body and placing it inside a car. The wife called 911, and the car drove away. Approximately 30 minutes later, while on the phone with 911 a second time, the wife saw Evans walk down the road and enter his

November 19, 2018. Following a hearing on February 5, 2019, the trial court denied the motion for new trial as amended on May 3, 2019. Evans filed his notice of appeal on June 3, 2019. The case was docketed in this Court to the term beginning December 2019 and is submitted for decision on the briefs.

home. Although the police responded to the couple's 911 calls, they did not begin investigating in earnest until the next morning after the husband spoke with the local chief of police, who then contacted the Georgia Bureau of Investigation ("GBI"). Upon examining the road near the couple's house and Evans' home, investigating officers located a large pool of blood, another smaller pool of blood, and long drag marks between the two. The blood in the road was later tested and determined to match Thomas' DNA.

During the investigation, Evans' girlfriend came out of the home she shared with Evans and was asked if she heard anything the night before, but she denied hearing anything and went back inside. Evans then came out of the home, and the officers asked him if he had heard anything the previous night. Evans responded that his girlfriend and he both heard what they thought was a drive-by shooting, the sound of which caused his girlfriend to jump up and run to another room. Evans said that he looked out of the window and saw a car drive down the road, turn around, and come back. He then showed the officers the path the car took. He also told police

that he believed the weapon fired could have been a rifle but that it sounded more like "a .44 Magnum Super Blackhawk pistol." Evans also said that the shooting might have been "a drug deal gone bad."

The GBI agent then conducted interviews in the neighborhood and, based on information that he obtained, went back to talk to Evans about his drug use, at which time Evans admitted that he had purchased cocaine the previous night from Calhoun. After observing "spots" of blood on Evans' hand, pants, and ear, the agent asked him to come to the City of Hagan Police Department for an interview, and Evans agreed.

At the police department, Evans signed a consent for the police to swab the blood on his body, while giving benign explanations for why the blood was present. Later testing revealed that some of the swabbed blood from Evans' ear contained Calhoun's DNA.

Evans was then returned to his house where he signed another consent form for the officers to search the home. In that search, police recovered two .44 Magnum shell casings, drug paraphernalia, a spoon containing white residue that later tested positive for

cocaine, blood in the area of the bathroom sink, a blood-spattered bar of soap, and a blood-spattered towel. Based on the suspected cocaine residue found in the residence, Evans and his girlfriend were arrested for possession of cocaine that evening and transported to the Evans County Sheriff's Office.

Earlier that day, Calhoun had been reported missing and a description was given of his car, a 1999 Mitsubishi Galant. The bodies of Calhoun and Thomas were subsequently found in the car, which had been driven into the woods and crashed into a tree. Calhoun's body was in the front passenger seat while Thomas' body was in the back seat. Blood spatter and bullet fragments, including a metal jacket from a bullet, were found inside the car. Thomas had at least one gunshot wound to the head; Calhoun was shot once in the back of the head. A latent palm print lifted from the rear driver-side quarter panel of the car matched Evans' right palm. Officers also found a debit card belonging to Evans' girlfriend in the rear passenger seat.

Law enforcement then obtained two separate search warrants for Evans' home, which were executed the next day, on October 20, 2006. During those searches, police recovered a wallet containing Calhoun's driver's license, a .44 Magnum Super Blackhawk handgun hidden in a closet ceiling, and a small quantity of marijuana. Ballistics testing confirmed that the metal jacket recovered from the Mitsubishi was fired from the .44 Magnum found at Evans' home.

Also that day, Evans was read his *Miranda* rights[2] and was interviewed while in custody. Evans told police he called Calhoun on October 18 to ask for a delivery of crack cocaine, although Evans did not have enough money to pay for it. Thomas drove Calhoun to Evans' house. Evans said he took the Blackhawk gun from his boss's truck[3] and had it in his waistband when he met with Calhoun and Thomas inside the car. Evans admitted that he first shot Thomas

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

[3] Evans' boss testified at trial that he discovered around dinner time on October 19, 2006, that his Blackhawk .44 Magnum handgun was missing from his truck, and he identified the gun taken from Evans' house as belonging to him.

because Thomas pointed a gun at him and demanded money. Evans then shot Calhoun when Calhoun argued with him. Evans explained that he pulled Thomas' body out of the driver's seat of the car and put Thomas' body down in the roadway when the car began to roll away. Evans chased after the car, put it into park, and then dragged Thomas' body to the car and put it in the back seat. He said he drove the car into the woods and threw Thomas' gun there; however, police did not locate any firearm during a subsequent grid search of the area. Evans took crack cocaine from the vehicle and went home to use it. Evans had crack cocaine on his person when he was arrested.

Evans testified to a similar story at trial, admitting that he shot Calhoun and Thomas; however, Evans testified at trial that Calhoun had a gun and he shot Calhoun first. Evans said he then shot Thomas when Thomas began reaching for Evans' gun. He admitted to driving Calhoun's and Thomas' bodies in the car and crashing it into a tree and that he was in possession of crack cocaine when he was arrested.

1. Evans does not dispute the legal sufficiency of the evidence supporting his convictions. Nevertheless, as is this Court's general practice in murder cases, we have reviewed the record and conclude that, when viewed in the light most favorable to the verdicts, the evidence presented at trial was sufficient to authorize a rational jury to find Evans guilty beyond a reasonable doubt of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).

2. Evans asserts that the trial court erred in denying his motion for new trial on the ground that his consent to search his person and home and the statements he made to law enforcement on October 19, 2006, were not voluntary because he was clearly and visibly under the influence of drugs at the time, and, therefore, the evidence should have been suppressed. Although Evans filed a motion to suppress evidence seized from the two search warrants executed on his home on October 20, he did not move to suppress the evidence seized the day before, which was based on Evans' consent

to search his person and home. As this Court has previously explained,

> [a] motion to suppress must be in writing and state facts showing that the search and seizure were unlawful. In the absence of such a motion, the State has no burden to prove the lawfulness of the manner in which evidence was obtained, and the accused fails to preserve any error with respect to the suppression of the evidence.

*Hernandez v. State*, 294 Ga. 903, 904 (757 SE2d 109) (2014) (citation and punctuation omitted). See also *Rodriguez v. State*, 295 Ga. 362, 367 (2) (a) (761 SE2d 19) (2014); OCGA § 17-5-30 (b). Accordingly, Evans has not preserved this issue for appeal.[4]

Likewise, this Court has also held that the failure to assert before the trial court that a statement to police is inadmissible fails to preserve the issue for appeal. See *Lee v. State*, 281 Ga. 511, 512-13 (2) (640 SE2d 287) (2007) (defendant waived review of claim that his statement to police was involuntarily obtained when he failed to raise the issue below); *Nixon v. State*, 255 Ga. 656, 658 (2) (a) (340 SE2d 7) (1986) (no error in admission of a statement made to police

---

[4] The old Evidence Code applied to Evans' trial in 2008.

after defendant made an explicit request for an attorney where defendant failed to raise the argument at trial, even after the district attorney suggested the possibility of a *Jackson-Denno* hearing). Here, before trial, Evans neither moved to suppress nor raised any issue regarding the non-custodial statements he made on October 19.

Moreover, on the first day of trial, the State mentioned the potential need for a hearing under *Jackson v. Denno*, 378 U.S. 368 (84 SCt 1774, 12 LE2d 908) (1964), and Evans' counsel indicated that Evans wanted the hearing. Although counsel cross-examined the State's witness about the events of October 19 and 20, 2006, she raised no argument before or after the hearing asserting that Evans' non-custodial statements were involuntary, and therefore inadmissible. The trial court ruled only that the custodial statements given after Evans received the *Miranda* warning on October 20 were admissible. Counsel also did not object to trial testimony regarding Evans' October 19 statements to police.

Therefore, Evans has forfeited any contention that his statements and consent given on October 19, 2006, were involuntary because he was under the influence of crack cocaine.

3. Evans also argues that trial counsel was ineffective for failing to file a motion to suppress his statements and the evidence obtained on October 19, 2006, without a warrant but with his consent to search.

To prevail on his claim of ineffective assistance of counsel, Evans must show both that his counsel's performance was deficient and that he was prejudiced as a result of that performance. See *Strickland v. Washington*, 466 U.S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). "To establish deficient performance, Appellant must show that his counsel's acts or omissions were objectively unreasonable, considering all the circumstances at the time and in the light of prevailing professional norms." *Morrall v. State*, 307 Ga. 444, 448 (2) (836 SE2d 92) (2019) (citing *Strickland*, 466 U.S. at 687-90). To show the requisite prejudice, Evans must demonstrate "a reasonable probability that, but for counsel's unprofessional errors,

the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694 (III) (B). Where, as here, an appellant claims that trial counsel was deficient for failing to file a motion to suppress, "the defendant must make a strong showing that the damaging evidence would have been suppressed had counsel made the motion." *Mosley v. State*, 307 Ga. 711, 720-21 (4) (a) (838 SE2d 289) (2020) (citation and punctuation omitted). See also *Stanley v. State*, 283 Ga. 36, 39 (2) (a) (656 SE2d 806) (2008). Evans has not made such a showing.

(a) *Voluntariness of Statements.*

To determine whether a statement was made involuntarily due to intoxication or the influence of drugs, courts look to the totality of the circumstances and consider factors including lucidity, coherency, manner of speech, and awareness of circumstances. See *Carter v. State*, 285 Ga. 394, 398 (5) (677 SE2d 71) (2009); *Henson v. State*, 258 Ga. 600, 601 (1) (372 SE2d 806) (1988). Moreover, evidence of intoxication, alone, is not enough to render a statement

involuntary. See *Davis v. State*, 301 Ga. 397, 405 (6) (a) (801 SE2d 897) (2017).

To support his claim that his October 19 statements were involuntary, Evans points to the trial testimony of his boss and his boss' son, who said that they sent Evans home from work early at around 9:00 or 9:30 a.m. on October 19 because he was not acting like himself and had trouble keeping his balance.[5] The boss' son stated that he suspected Evans had smoked too much marijuana.

However, the GBI agent who led the murder investigation testified at the *Jackson-Denno* hearing held on the first day of trial that when he first encountered Evans at around 10:00 a.m. on October 19 and asked him if he had heard anything the night before, Evans did not appear to be under the influence of anything. Rather, he was coherent and aware of his surroundings. The agent spoke with him again later in the day, after Evans had borrowed a lawn mower from a neighbor and cut his own grass. At that point, the

---

[5] At the motion for new trial hearing, the State argued in rebuttal that Evans' conduct could also be explained by having just committed "a heinous crime" by killing two people.

officers asked Evans to return to the police department to speak with them, and Evans complied. During the following hour-long non-custodial interview, the officers asked Evans about the specks of blood on his ear, hand, and knee, and Evans provided a different, coherent explanation for each blood stain.

Considering the totality of the circumstances surrounding Evans' October 19 statements, including the GBI agent's testimony regarding Evans' demeanor, conduct, and responses to officers during the interview, we conclude that the evidence supports the trial court's implicit finding in denying the motion for new trial that Evans was not visibly under the influence of drugs and that his statements were freely and voluntarily given.

Because we conclude that any motion to suppress such evidence would not have been successful, the trial court properly denied his motion for new trial on the ground of ineffective assistance of counsel. See *Mosley*, 307 Ga. at 721 (4) (a). See also *White v. State*, 307 Ga. 882, 889 (3) (c) (838 SE2d 828) (2020) (failure

to make a meritless motion does not support a finding of ineffective assistance of counsel); *Davis*, 301 Ga. at 405 (6) (a).

(b)   *Consent to Search.*

Turning to Evans' contention that his consent to search his person and home was also involuntarily obtained because he was visibly intoxicated, we begin our analysis with first principles: "[t]he Fourth Amendment guarantees the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *State v. Turner*, 304 Ga. 356, 359 (1) (818 SE2d 589) (2018) (citation and punctuation omitted). See U.S. Const. Amend. IV. "Ordinarily, a search [by law enforcement] is deemed to be reasonable when conducted pursuant to a judicial warrant, which the Fourth Amendment requires to be supported by probable cause." *Caffee v. State*, 303 Ga. 557, 560 (2) (814 SE2d 386) (2018) (citing *Mincey v. Arizona*, 437 U.S. 385, 390 (98 SCt 2408, 57 LE2d 290) (1978)). "Searches conducted without a warrant are unreasonable under the Fourth Amendment unless they fall within a well-established exception to the warrant requirement," including

"searches conducted pursuant to consent, the existence of exigent circumstances, and searches incident to a lawful arrest." Id. "[A] valid consent to a search eliminates the need for either probable cause or a search warrant." *Turner*, 304 Ga. at 359 (1) (citation and punctuation omitted). See also *Brooks v. State*, 285 Ga. 424, 425 (677 SE2d 68) (2009) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (93 SCt 2041, 36 LE2d 854) (1973)).

"[T]o justify a warrantless search on the grounds of consent, the State has the burden of proving that the consent was freely and voluntarily given under the totality of the circumstances." *Raulerson v. State*, 268 Ga. 623, 625 (2) (a) (491 SE2d 791) (1997) (citing *Schneckloth*, 412 U.S. at 229). "It is only by analyzing all the circumstances of an individual consent that it can be ascertained whether in fact it was voluntary or coerced." *Brooks*, 285 Ga. at 425-26 (citation and punctuation omitted). See *Raulerson*, 268 Ga. at 625 (2) (a) (listing factors to be considered for voluntary consent). *Arrington v. State*, 286 Ga. 335, 344 (15) (687 SE2d 438) (2009) ("no single factor is controlling") (citation and punctuation omitted).

Here, Evans points to no evidence other than the testimony of his boss and boss' son about his conduct on the morning of October 19 to support his claim that the consent to search his person and home was involuntarily obtained because he was intoxicated. Nearly five hours after Evans was sent home from work, the GBI agent asked for permission to take swabs from the blood stains on his body and clothes after an hour-long, non-custodial interview at the police department, and Evans agreed, executing a written consent to search his person at around 2:20 p.m. Evans later consented to the search of his home, signing a written consent form at 3:00 p.m.[6]

Considering the totality of the circumstances, including the lack of evidence that Evans appeared intoxicated at the time he executed the consent forms, we again conclude that the record supports the trial court's implicit finding that Evans freely and voluntarily gave consent to search his person and home. Because a motion to suppress the evidence would have been meritless, the trial

---

[6] Although the police officer who arrested Evans several hours later and drove him to the jail described Evans as not himself and "strung out," the officer did not attribute his demeanor to drug use.

court properly denied his motion for new trial on this ground. See

*White*, 307 Ga. at 888 (3) (c); *Mosley*, 307 Ga. at 721 (4) (a).

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 4, 2020.
Murder. Evans Superior Court. Before Judge Cheney.
*Rouse & Copeland, Amy L. Copeland*, for appellant.
*Tom Durden, District Attorney, Sandra Dutton, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew B. Crowder, Assistant Attorney General*, for appellee.