**THIRD DIVISION**
**DOYLE, P. J.,**
**HODGES and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**May 7, 2024**

# In the Court of Appeals of Georgia

A24A0217. CRAWFORD v. THE STATE.

DOYLE, Presiding Judge.

A jury found Eddie Crawford guilty of four counts of aggravated child molestation,[1] child molestation,[2] and incest[3] based on acts committed against his 12-year-old daughter.[4] Crawford appeals from the denial of his motion for new trial, raising the single enumeration of error that his trial counsel was ineffective for failing to strike for cause Juror 38, a corrections officer who worked at the jail where Crawford was held after his arrest in connection with this case. We find no error.

---

[1] See OCGA § 16-6-4 (c).

[2] See OCGA § 16-6-4 (a).

[3] See OCGA § 16-6-22 (a) (1).

[4] Crawford was sentenced to life in confinement.

Viewed in the light most favorable to the jury's verdict,[5] the evidence at trial established that a teacher at the Putnam County Middle School received information from a sixth grade student that a fellow classmate, the victim herein, disclosed to her friends that she was being sexually abused by her father, Crawford. The assistant principal reported the incident to the school counselor, after speaking with the reporting student and the victim. Ultimately, the Putnam County Department of Family and Children's Services ("DFACS") visited the victim's home, along with officers from the Eatonton Police Department.

The DFACS caseworker testified that the victim told her that her father made her put her mouth on his "thing" and that he hurt her butt and kissed her all over after she told him that what he was doing to her was hurting her. The caseworker arranged a forensic interview of the victim, which occurred on November 9, 2015. During the interview, the victim described the sexual abuse she had experienced at the hands of her father, and the videotape of her interview was played for the jury. . The family nurse practitioner who examined the victim testified that the victim did not

[5] See *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).

have any injuries to her anus or vagina, which was not an uncommon finding in this kind of case.

The victim testified that the abuse started when she was 11 or 12 years old. She testified that on one occasion when her mother was away, Crawford made her watch pornographic material on a computer while he was nude, licked her private area, tried to penetrate her anus with his penis, and after she said she was hurting, he forced her to perform oral sex on him instead, masturbated, and ejaculated on her foot. On another occasion, he came into her room and forced her to perform oral sex, ejaculating in her mouth. On a different occasion, Crawford came into her room with his penis exposed, pulled her shorts down, and licked her anus. The victim testified that she told her friends what was going on but did not feel comfortable talking to an adult about the abuse.

Investigator Cardwell of the Eatonton Police Department testified that he removed a fitted sheet and comforter from the victim's bedroom that appeared to have semen on them. Special Agent Crosby of the Georgia Bureau of Investigation met Investigator Cardwell at the home and used an alternative light source in connection with the presumptive seminal fluid test kit to look for semen, receiving a positive

indication for seminal fluid on the victim's bed. A GBI forensic biologist conducted further testing on the comforter and sheet and found five stains on the comforter and forty-two on the sheet, but further chemical testing failed to reveal the presence of seminal fluid. The biologist explained that if either item had been washed, the chemical tests would not show seminal fluid, and the victim's mother testified that she washed the items on a regular basis.

The jury found Crawford guilty of four counts of aggravated child molestation, child molestation, and incest. Crawford filed a motion for new trial, in which he argued, among other things, that his trial counsel was ineffective for failing to strike juror 38 for cause. In its order denying Crawford's motions for new trial, the court noted that the parties did not ask for voir dire to be taken down. Relying on its notes from voir dire, the trial court found that juror 38 did not indicate that he knew Crawford, did not remember Crawford being at the jail, and knew nothing about the case. The court recalled that the only issue of concern with juror 38 was whether he had arrest powers, and he confirmed that he did not. In light of these factors, the court concluded that even had Crawford's counsel sought to strike juror 38 for cause, such a strike would have been denied in the absence of evidence that the juror could not be

fair and impartial and that Crawford failed to establish how he was prejudiced by juror 38's presence on the jury. Crawford now appeals arguing only that his trial counsel was ineffective for failing to move to strike juror 38 for cause.

> In order to establish ineffective assistance of counsel, [Crawford] must show both that counsel's performance fell below an objective standard of reasonableness, and that, but for counsel's deficient performance, there is a reasonable probability that the outcome of the trial would have been different. We affirm the trial court's ruling on a defendant's claim of ineffective assistance of counsel unless that determination is clearly erroneous.[6]

The facts relevant to the issue on appeal show that at the conclusion of jury selection, Crawford's counsel asked the trial court to allow him to withdraw an earlier strike used on a juror so that he could use that strike on juror 38. When counsel could not offer authority that allowed him to do so, the trial court refused his request. At the hearing on the motion for new trial, juror 38 testified that he was a jail officer at the Putnam County Sheriff's Department when Crawford was arrested, that his primary job was doing the intake process of inmates, which included fingerprinting,

---

[6] (Citation and punctuation omitted.) *Soler v. State*, 354 Ga. App. 93, 96 (2) (840 SE2d 169) (2020). See also *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984).

photographing, and searching them, that he did not have arrest powers, that he searched Crawford when he was booked; that at the time of trial, he did not remember Crawford or that he had encountered him at the jail; and that he did not discover until after the trial that he had searched Crawford.

Crawford argues that trial counsel was ineffective for failing to strike juror 38 for cause, in accordance with *Kier v. State*,[7] but *Kier* does not stand for the general proposition that all corrections officers should be excused for cause. Rather, the holding in *Kier* is limited to the facts of that case wherein a potential juror identified himself as an employee at the jail where the defendant was housed before trial and said he knew the defendant "in passing."[8] Defense counsel moved to strike the juror for cause, and the trial court refused to do so because the juror had been candid and indicated he could be impartial,[9] which forced defense counsel to use a peremptory strike to excuse the juror. On appeal, we agreed that the juror in that case should have been struck for cause, concluding that

---

[7] 263 Ga. App. 347 (587 SE2d 841) (2003), overruled in part by *Willis v. State*, 304 Ga. 686 (820 SE2d 640) (2018).

[8] *Kier*, 263 Ga. App. at 347 (1).

[9] Id. at 348 (1).

[t]he prospective juror in this case was not just any corrections officer; he was an employee of the facility in which Kier was incarcerated on the charges for which he was facing trial. And . . . he also had personal knowledge of Kier as an inmate of the jail at which he worked. *We are in no manner suggesting a per se rule that all corrections officers should be excused for cause from jury service in a criminal case. Such a holding would contravene the well-established principles discussed above.* But in this unique and limited circumstance, we conclude that the reasoning used by the Supreme Court in *Hutcheson*[*v. State*][10] applies equally here. The nature of this prospective juror's duties as an employee of the jail in which Kier was incarcerated, his close identification with the criminal process, and this admitted familiarity with Kier inherently raise inevitable "questions

---

[10] 246 Ga. 13 (268 SE2d 643) (1980). In *Hutcheson*, the jurors at issue were police officers, and the Supreme Court held:

It is inherent in the nature of police duties and the closeness with which such officers are identified with criminal procedures that questions regarding possible bias, fairness, prejudice[,] or impermissible influence upon jury deliberations inevitably arise. These questions cannot be erased by a mere subjective, albeit sincere, declaration by the officer that he or she can be fair and impartial as to a defendant. The constitutional test of impartiality does not turn on the subjective declarations of the individual jurors.

(Punctuation omitted). Id. at 14 (1).

regarding possible bias, fairness, prejudice or impermissible influence upon jury deliberations."[11]

Unlike the corrections officer in *Kier*,[12] however, juror 38 had no personal knowledge of the defendant being an inmate at the jail when he served on the jury.[13] Moreover, in cases that pre- and post-date *Kier*, this Court has held that the limited powers of corrections officers "do not necessitate the imputation of possible bias as in the instance of full-time police officers."[14] In *Pace v. State*,[15] which also pre-dated *Kier*, the Supreme Court explained that correction officers are not subject to an excusal for cause because they have no arrest powers,[16] which principle the Court reiterated *post-Kier in Allen v.* State.[17] The record shows that juror 38 had no arrest

---

[11] (Citations omitted; emphasis added). *Kier*, 263 Ga. App. at 349 (1).

[12] See id.

[13] See *Kier*, 263 Ga. App. at 349 (1).

[14] *Kent v. State*, 179 Ga. App. 131, 131-132 (345 SE2d 669) (1986). See also *Thompson v. State*, 212 Ga. App. 175 (1) (442 S.E.2d 771) (1994), overruled on other grounds by *Willis*, 304 Ga. at 706 (11) (a), n. 3.

[15] 271 Ga. 829 (524 SE2d 490) (1999). See also *Barnes v. State*, 269 Ga. 345, 351 (8) (496 SE2d 674) (1998) (same).

[16] See *Pace*, 271 Ga. at 835 (10).

[17] 296 Ga. 785, 786 (2) (770 SE2d 589) (2015).

powers, that he had no particularized knowledge of Crawford before the trial, and Crawford offered no evidence that the juror could not be impartial or fair. Accordingly, the argument that Georgia law required that he be excused for cause fails.

As Crawford points out, in *Willis*, our Supreme Court overruled or disapproved numerous Court of Appeals cases, including *Kier*, supra, on an issue not pertinent here.[18] *Willis* also held, however, that "a defendant must show on appeal that one of the challenged jurors who served on his or her twelve-person jury was unqualified."[19] Again, the premise of Crawford's argument is that the juror was unqualified because of his position, and as discussed above, this argument fails. Accordingly, trial

---

[18] *Willis*, 304 Ga. at 706 (11) (a) n.3. The cases were overruled to the extent that they relied on *Harris v. State,* 255 Ga. 464, 465 (2) (339 SE2d 712) (1986), in which the trial court refused to strike a state patrolman, and the Supreme Court ruled that "[t]he defendant's use of his peremptory strikes [would] no longer play a role in [its] evaluation of the harm caused by the refusal to strike an unqualified juror. . . . The defendant's failure to exhaust his peremptory strikes . . . does not render the error harmless." *Harris*, 255 Ga. at 465 (2). The *Willis* court reversed *Harris*, holding that "a defendant is not presumptively harmed by a trial court's erroneous failure to excuse a prospective juror for cause simply because the defendant subsequently elected to remove that juror through the use of a peremptory strike." Id. at 707 (11) (a).

[19] *Willis*, 304 Ga. at 707 (11) (a).

counsel's failure to move to excuse the juror for cause did not constitute deficient performance.[20]

Even if we concluded that trial counsel's failure to excuse the juror for cause constituted deficient performance, we nonetheless find that Crawford did not receive ineffective assistance of counsel. As stated earlier, "[t]o establish that his trial counsel provided ineffective assistance, [Crawford] has the burden of satisfying both prongs of the test set out in *Strickland*."[21] In order to satisfy the second prong, Crawford "must show the deficient performance prejudiced the defense, which requires showing that counsel's errors were so serious that they likely affected the outcome of the trial."[22] In a one-sentence argument, Crawford's argues that he "was prejudiced by having the jailer who booked him in on these charges serve on the jury that convicted him." This argument, for which Crawford provides no citation of authority, does not satisfy his burden. Crawford "does not discuss or cite to any evidence

---

[20] See generally *White v. State*, 307 Ga. 882, 889 (3) (c) (838 SE2d 828) (2020) (counsel's failure to make a meritless motion does not support a finding of ineffective assistance of counsel).

[21] *Harper v. State*, 318 Ga. 185, 192 (1) (2024).

[22] Id.

presented at either the trial or the motion-for-new-trial hearing to support his summary contention that he was prejudiced"[23] by juror 38's participation. The fact that the juror was a correction officer, alone, who had no personal knowledge of Crawford and no arrest powers did not demand that he be excused for cause. Thus, as the trial court correctly concluded, even had counsel asserted a strike for cause, it would have been refused. Moreover, the victim's testimony, as well as that of those with whom she shared the incidents, was sufficient to support Crawford's convictions.[24] In sum, Crawford has not established that his trial counsel was ineffective, so we affirm his conviction.

---

[23] *Day v. State*, 367 Ga. App. 803, 813 (4) (888 SE2d 608) (2023).

[24] See OCGA § 24-14-8 ("The testimony of a single witness is generally sufficient to establish a fact… ."). See also *Torres v. State*, 353 Ga. App. 470, 476 (1) (838 SE2d 137) (2020) (direct evidence of sexual abuse based on victim's testimony, standing alone, was sufficient to support convictions); *Croft v. State*, 348 Ga. App. 21, 22 (1) (819 SE2d 550) (2018) (victim's testimony, standing alone, was sufficient to sustain convictions for child molestation, aggravated sexual battery, and other crimes), overruled on other grounds by *Croft v. State*, 358 Ga. App. 380, 380 (855 SE2d 396) (2021); *Smith v. State*, 320 Ga. App. 408, 410 (1) (a) (740 SE2d 174) (2013) ("The testimony of a victim of child molestation or aggravated child molestation need not be corroborated. The testimony of one witness is generally sufficient to establish a fact.") (citations and punctuation omitted); *Lilly v. State*, 285 Ga. App. 427, 428-429 (646 SE2d 512) (2007) (holding that the evidence was sufficient to support child molestation conviction based on victim's testimony that her uncle touched her "privates").

*Judgment affirmed. Hodges and Watkins, JJ., concur.*