**THIRD DIVISION**
**DOYLE, P. J.,**
**HODGES and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 4, 2024**

# In the Court of Appeals of Georgia

A24A0396. SMITH v. THE STATE.

DOYLE, Presiding Judge.

A jury convicted Jahmar Austin Smith of two counts of armed robbery, two counts of aggravated assault, and two counts of possession of a firearm during the commission of a felony. Smith filed a motion for new trial, in which he alleged ineffective assistance of counsel. The trial court denied his motion, and Smith filed the instant appeal, alleging that his trial counsel was ineffective in several regards. Finding no error, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the evidence at trial established that on December 31, 2016, Edgar Glover, store manager of an Ingles

---

[1] See *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).

grocery store in Newton County, Georgia, arrived at work at 6:00 a.m., and prepared to make a bank deposit of the previous day's revenue. Glover selected a different employee to accompany him each day on his routine trip to the bank before the store opened, and on this day, Ballard, a night supervisor, joined him. The two men walked to Glover's truck, and Glover manually unlocked the passenger door and opened it. At that moment, a Black male, dressed in a black ski mask, black coat, black shoes, and black gloves, approached the men with a silver revolver in his hand. He pointed the gun at Glover's head, said "Give me what you got," and then repeated, "Mr. G., give me what you got." Glover stated that he did not have anything, and the robber replied, "I know better than that."

After an exchange with the robber that lasted several minutes, during which the robber repeatedly called Glover "G" or "Mr. G.," Glover eventually threw the bank bag onto the ground. The robber told the men to get into the truck then picked up the items on the ground. Glover retrieved a gun from the glovebox of his truck and shot around the door of the truck to shoot at the robber. As the robber ran away, he fired his gun multiple times, striking the truck door by Glover's head, a headlight, and the

truck's back tire. Glover and Ballard returned to the store, and Ballard called 911, reporting that the robber sounded like a guy who previously worked for the store.

Detective Jeff Bruno of the Covington Police Department reported to the scene and talked with Glover and Ballard. Ballard told him that he was sure that the robber was Smith, whose voice he recognized because they had chatted often when Ballard supervised Smith on the night shift.[2] Detective Bruno requested a list of employees who had recently quit or had been fired from the store, and on the list, saw that Smith had been fired by Glover on December 3, 2016. Detective Bruno obtained Smith's address, where he lived with another former employee, Lamont Castleberry, who had also been fired although not by Glover. Smith and Castleberry lived less than a mile from the store, and the robber ran in the direction of their residence.

Detective Bruno and other officers went to Smith's address and knocked on the door shortly after noon on the day of the robbery. As the officers stood outside the door, they could hear people running around the house and smelled the odor of burnt marijuana. The occupants, Smith, Castleberry, Rayford Starks, and Tiffany Custer were in the living room, while Smith's girlfriend, Camille Hunter, was in the front

---

[2] Ballard also had supervised Castleberry on the night shift and testified that he was familiar with his voice as well and that the robber did not sound like Castleberry.

3

bedroom. Custer testified that when the police knocked, Castleberry and Smith went to the back bedroom, and Starks flushed his marijuana cigarette down the toilet. Smith headed to the kitchen with a bag of unknown contents while Castleberry returned to the living room and instructed Custer not to answer the door. After finishing his task in the kitchen, Smith answered the door.

Detective Bruno observed that Smith was wearing all black, including a black hat, shirt, pants and shoes, and was the approximate height and build of the description of the robber given by the witnesses. The detective explained that they were investigating the robbery and wanted to talk with previous employees. All of the occupants of the residence agreed to give statements at the Covington Police Department. Detective Bruno spoke to Hunter first, who told him that Smith was with her when she went to bed the night before and when she woke up at 9:00 a.m. though she could not say if he was there while she was asleep. Smith stated that he was drinking with friends throughout the night until going to bed with Hunter and he got up at 10:00 or 11:00 a.m., but he was inconsistent about what he did that day before the officers arrived. He denied knowing anything about the robbery and denied having guns in his home. Smith's statement was recorded and played for the jury.

Smith's name was the sole name on the lease of the residence, and he gave the officers consent to search the home. During the search, Smith accompanied the officers while they searched, while Hunter and Castleberry remained in the living room. The officers found two spent rounds from a .44 Magnum under the couch in the living room and a black stocking cap with two eyeholes cut out between the sofa cushions. The officers next searched the room where Castleberry slept, where Smith also kept his belongings in trunks in the closet. When the officers removed the trunks, which Smith offered to move for them, they observed a silver gun tucked into a shirt in the closet. In the same bedroom, the officers also found shoes for Smith and Hunter, $532 sitting on the top of a hamper in the closet, $500 in an Epsom salt box in the bathroom, and a box of .44 Magnum shells in the closet, all of which Castleberry, Smith, and Hunter denied knowing about.

All three were transported back to the police department, where Smith gave a second statement, which was also played for the jury. In his second statement, Smith said that he had $2 in his checking account, was two months behind on his rent, and that the shoes were a gift from him to Hunter though she gave him the money he used to purchase the shoes. He also stated that he had never seen or handled the gun found

in his home. Hunter and Castleberry explained where they had been that morning, the items they had spent money on, and where the money they spent came from, which the officers were able to verify. The officers arrested Castleberry for possession of a scheduled drug, after finding two ecstasy pills on his person. Castleberry failed to appear in court on his charges, and at the time of trial, his whereabouts were unknown. Ballistic testing revealed that the bullets found at Ingles were fired from the gun found in the closet at Smith's home.

Smith was charged with two counts each of armed robbery, aggravated assault, and possession of a firearm during the commission of a felony, and he was found guilty on all counts. He filed a motion for new trial, alleging ineffective assistance of counsel, which the trial court denied. This appeal followed, in which Smith asserts that trial counsel was ineffective because she failed to move to suppress the search of his home, failed to object to hearsay, failed to call witnesses to support his defense, failed to effectively cross-examine the State's witnesses, and failed to secure the alibi witness. As discussed below, Smith has fallen far short of establishing ineffective assistance of counsel.

To establish ineffective assistance of counsel, a defendant must show both that his counsel's performance was professionally deficient

6

and that he suffered prejudice as a result.[3] To prove deficiency, he must show that his lawyer performed his duties in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms, which is no easy showing, as the law recognizes a strong presumption that counsel performed reasonably. To show prejudice, he must show that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.[4]

"We need not address both components of the *Strickland* test if [Smith] makes an insufficient showing on one. And in reviewing a claim of ineffective assistance of counsel, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we review the court's legal conclusions de novo."[5]

---

[3] See *Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984).

[4] (Citations and punctuation omitted.) *Lee v. State*, 318 Ga. App. 412, 420 (6) (897 SE2d 856) (2024). See also *Maynor v. State*, 317 Ga. 492, 499 (3) (a) (893 SE2d 724) (2023) ("Demonstrating deficient performance is a difficult task because there is a strong presumption that counsel's representation was within the wide range of reasonable professional assistance.") (punctuation omitted).

[5] *Kimbro v. State*, 317 Ga. 442, 453 (8) (a) (893 SE2d 678) (2023).

1. First, Smith posits that trial counsel was ineffective because she failed to file a motion to suppress the search of his home. When an appellant makes such a claim, "the appellant must make a strong showing that the damaging evidence would have been suppressed had counsel made the motion."[6] Smith, however, has not made such a showing, as he asserts no argument or citation of authority whatsoever to support his claim. Moreover, Smith consented to the search.

> Searches conducted without a warrant are unreasonable under the Fourth Amendment unless they fall within a well-established exception to the warrant requirement, including searches conducted pursuant to consent, the existence of exigent circumstances, and searches incident to a lawful arrest. A valid consent to a search eliminates the need for either probable cause or a search warrant.[7]

---

[6] (Citation and punctuation omitted). *Tabor v. State*, 315 Ga. 240, 249 (3) (b) (882 SE2d 329) (2022).

[7] (Citations and punctuation omitted). *Evans v. State*, 308 Ga. 582, 588 (3) (b) (842 SE2d 837) (2020).

Because Smith failed to show that any evidence or statements would have been suppressed had counsel filed a motion to suppress, he has not established that his trial counsel was deficient, and this claim fails.[8]

2. Smith argues that trial counsel failed to object to hearsay statements but does not clearly set forth or support this argument in his brief. In one sentence, Smith summarily states that "[a] significant amount of testimony and hearsay evidence introduced by the State was admitted without objection from the defense counsel." In another, he states that counsel "opened the door to damaging hearsay evidence statements made by Camille to give [Smith] an alibi, that were already in evidence." However, Smith does not specifically identify the testimony to which he believes counsel should have objected and failed to offer any supporting facts or details to support his argument. Accordingly, Smith has failed to establish this claim of

___

[8] See *Roseboro v. State*, 308 Ga. 428, 435 (2) (a) (841 SE2d 706) (2020) ("Because [the appellant] has not made a showing that had a motion been filed, the evidence would have been suppressed, we agree with the trial court's conclusion that trial counsel was not deficient.").

ineffectiveness, and "[i]t is not the function of this Court to cull the record in search of error."[9]

3. Smith argues that trial counsel was ineffective because she failed to call witnesses on his behalf. Specifically, Smith maintains that counsel should have called Hunter, who would have given him an alibi, Rayford, who would have offered evidence that supported the defense strategy that Castleberry committed the charged offenses, and expert witnesses. Again, we discern no error.

Trial counsel testified that the state offered three expert witnesses to testify about the gun and none of them were able to connect the gun to Smith, even though one expert connected the gun to the robbery. With regard to Hunter, trial counsel filed a notice of an alibi witness early in the case, but after Smith and Hunter were no longer romantically involved, counsel spoke with Hunter again and decided not to call her after concluding that she would be a hostile witness. Counsel testified that Hunter's statement that Smith was in bed with her when she went to sleep and when she awakened, which was introduced through Investigator Bruno's testimony, was useful to Smith's defense, and her decision not to call Hunter as a witness was also strategic

---

[9] (Punctuation omitted.) *Wimbush v. State*, 345 Ga. App. 54, 69 (5) (812 SE2d 489) (2018).

in that it did not provide the State the opportunity to cross-examine her on the point. Trial counsel testified that she did not call Starks after talking with him because she did not believe his testimony would be beneficial to Smith. Counsel explained that she did not want Smith to testify because she did not want his prior record to be introduced or risk him being impeached. She consulted with him about testifying on his own behalf, and he chose not to do so. Finally, trial counsel testified that she also consulted with Smith about the other witnesses she chose not to call.

"[A] decision as to which defense witnesses to call is a matter of counsel's trial strategy and tactics and will not support a claim of ineffective assistance of counsel unless it is so unreasonable that no competent attorney would have made the decision under the circumstances."[10] Similarly, "[a]n attorney's decision about which defense to present is a question of trial strategy, and trial strategy, if reasonable, does not constitute ineffective assistance of counsel."[11] Here, Smith has not established that trial counsel's decision not to call certain witnesses or strategy to point the finger at

---

[10] (Punctuation omitted.) *Sullivan v. State*, 308 Ga. 508, 511 (2) (a) (842 SE2d 5) (2020).

[11] (Punctuation omitted.) *Brooks v. State*, 309 Ga. 630, 637 (2) (847 SE2d 555) (2020).

Castleberry was unreasonable. Overcoming the presumption that trial counsel's assistance "was within the wide range of reasonable professional assistance . . . require[d] [Smith] to show that no reasonable lawyer would have done what his lawyer did, or would have failed to do what his lawyer did not."[12] Smith has not met that burden.

4. Finally, Smith argues that trial counsel provided ineffective assistance of counsel when she failed to cross-examine Ballard effectively by challenging his testimony that he recognized Smith's voice. Trial counsel testified that she regretted asking Ballard if he were completely sure that the voice he heard at the robbery was Smith's because his positive reply bolstered his credibility. Improper bolstering, however, occurs when a witness's statement directly addresses the credibility of another witness.[13] "And when we evaluate whether testimony constitutes improper bolstering, we consider the disputed testimony in context."[14] The fact that trial counsel's question allowed Ballard to testify again to what he had already clearly

---

[12] (Citation and punctuation omitted.) *Maynor*, 317 Ga. at 499 (3) (a).

[13] See *Brown v. State*, 302 Ga. 454, 460-461 (2) (a) (807 SE2d 369) (2017).

[14] See id. at 461 (2) (a).

stated did not amount to improper bolstering, and therefore, it does not constitute deficient performance.

"A defendant's right to effective assistance of counsel does not guarantee errorless counsel or counsel judged ineffective by hindsight, but counsel likely to render and rendering reasonably effective assistance."[15] Smith has fallen short of establishing his burden that trial counsel performed deficiently.[16] Therefore, "it is unnecessary to examine the other [*Strickland* prong], and [Smith's] claim fails[.]"[17] Accordingly, the trial court's denial of his motion for new trial was appropriate.

*Judgment affirmed. Hodges and Watkins, JJ., concur.*

---

[15] (Punctuation omitted.) *Nikitin v. State*, 257 Ga. App. 852, 857 (2) (572 SE2d 377) (2002).

[16] See *Montanez v. State*, 311 Ga. 843, 853 (2) (860 SE2d 551) (2021) (defendant must carry the burden of establishing deficient performance).

[17] *Lowe v. State*, 314 Ga. 788, 795 (2) (b) (879 SE2d 492) (2022).