NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: October 15, 2025

S25A0789. WOSCHULA v. THE STATE.

PINSON, Justice.

Anthony Woschula was convicted of malice murder and other crimes in connection with the death of Victor Clark.[1] On appeal, he contends that the trial court erred by failing to charge the jury on

---

[1] The crimes happened on June 19, 2018. On August 21, 2018, a Barrow County grand jury returned an indictment against Woschula on nine counts: malice murder (Count 1), felony murder (Counts 2–3), aggravated assault (Counts 4–5), possession of a firearm during the commission of a felony (Counts 6–7), concealing the death of another (Count 8), and possession of methamphetamine (Count 9). He was tried by a jury in November 2021. The jury returned guilty verdicts on all counts. The trial court sentenced Woschula to a total sentence of life plus eighteen years in prison. He received a life sentence for malice murder, five years in prison to be served consecutively to the life sentence for possession of a firearm during the commission of a felony, ten years in prison to be served consecutively to the other counts for concealing the death of another, and three years to be served consecutively to the other counts for possession of methamphetamine. The court found that the felony murder counts were vacated as a matter of law, the aggravated assault counts merged with malice murder, and the possession of a firearm counts merged into each other. Woschula filed a motion for new trial, followed by an amended motion, which the trial court denied. He then timely appealed to this Court. The case was docketed to this Court's April 2025 term and submitted for a decision on the briefs.

voluntary intoxication, failing to exclude evidence under OCGA § 24-4-404(b) (Rule 404(b)), and failing to exclude statements that Woschula made to law enforcement during post-arrest interviews.

These claims fail. The trial court properly declined to give the requested voluntary intoxication charge because the charge as Woschula requested it was not a correct statement of law. Any error in admitting the evidence under Rule 404(b) was harmless. And admitting Woschula's statements to law enforcement was proper as a matter of federal constitutional due process. So Woschula's convictions are affirmed.

1. The evidence presented at trial showed the following. Woschula lived with his father, Paul Woschula, at Paul's home in Barrow County. Clark, one of Paul's friends, would also stay there for extended periods of time.

On June 19, 2018, Clark was staying at Paul's home. When Paul got home from work that day, neither Woschula nor Clark were there. Paul noticed that Clark's car was not parked at the house, which he thought was odd because it usually was. By the time Paul

went to bed around 11 o'clock that night, neither Clark nor Woschula had returned home.

The next morning, Woschula was dropped off at the home by a friend. Paul asked Woschula where he had been and if he had seen Clark, whom Paul referred to as "Vic." Woschula replied that he had not seen Clark and asked, "Vic who?" This response "alarmed" Woschula's father, so he continued to ask, "where's Vic?" Woschula told his father, "you don't have a problem anymore." Woschula also said that Clark was "in the back of [his friend's] trunk." Paul testified that Woschula's odd statements and behavior made him "concerned." Paul thought that Woschula was using methamphetamine, a drug that he had used frequently for 20 years.

Paul asked if Woschula had seen Clark's car, and Woschula said he had not. Paul then called the friend who had dropped Woschula off, and the friend told him that she had seen Clark's car parked at a nearby intersection. Paul drove there and found the car but not Clark. After remembering what Woschula had said to him earlier that day, Paul tried to open the car's trunk but he could not

get it open.

Paul returned home and continued to press Woschula for information about where Clark was and what was happening, but Woschula was not forthcoming. Paul decided at that point to call 911 and waited for a deputy outside the house. When the sheriff's deputy got there, he tried to talk to Woschula, who was walking around outside. At that point, Woschula threw a bag of methamphetamine at Paul and then took off running into the woods. He was later apprehended at a nearby home.

When the arresting deputies searched Woschula, they found keys belonging to a Toyota, which was the make of Clark's car. Deputies then went to Clark's car and were able to open the trunk. Inside, they found Clark's body wrapped in a blanket. He had been killed by several gunshots.

On the date of Woschula's arrest, Woschula waived his *Miranda*[2] rights and gave an initial interview to police. Lieutenant

---

[2] See *Miranda v. Arizona*, 384 US 436 (1966).

Chandler, one of the interviewing deputies, testified that it was apparent Woschula was "coming off of something" but that he appeared to understand who the deputies were and what they were speaking about. Woschula admitted to killing Clark and provided the deputies with specific details, like the type of guns he used, which were later corroborated by physical evidence.

The next day, Woschula asked to meet with the case investigator, so Lieutenant Wilkerson and another deputy on the case went to the jail. Again, Woschula waived his *Miranda* rights. During that second interview, Woschula said he "snapped and killed Victor Clark" and again gave specific details, including where he stowed the guns after the murder. Based on Woschula's interview, the police were able to find the guns stashed at a friend's house. A GBI expert testified at trial that forensic tests confirmed that some of the bullet casings found at the scene were fired from the guns Woschula had stashed.

At trial, Woschula argued that the killing was voluntary manslaughter rather than murder. He also testified in his own defense,

and he admitted to shooting Clark. Woschula testified that Clark had sexually assaulted him when he was a child, and that he "snapped" and "lost control" before the killing because Clark tried to sexually assault him again. Woschula introduced expert testimony about the dynamics of sexual abuse, disclosure, and PTSD. Woschula also introduced extensive expert testimony about the effects of methamphetamine use and addiction. The jury returned guilty verdicts on all charges.

2. Woschula contends that the trial court erred by failing to give his requested jury charge on voluntary intoxication. Because Woschula failed to renew his objection to the omission of this instruction after the charges were given, this claim is reviewed for plain error. See *Jivens v. State*, 317 Ga. 859, 861 (2023). "Under plain error review, we can reverse only if the trial court made a clear or obvious error that was not affirmatively waived, likely affected the outcome of the proceedings, and seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Behl v. State*, 315 Ga. 814, 815–16 (2023).

Woschula's claim of plain error fails. A trial court does not err by refusing to give a requested instruction that is not a correct statement of law. See *Simpson v. State*, 289 Ga. 685, 689 (2011). And Woschula's requested instruction was not a correct statement of law. Woschula asked the court to instruct the jury on voluntary intoxication, and to explain that "[i]f the influence of drugs impairs a person's mind to the extent that the person is not able to form the intent to commit the act which he is charged — with which he is charged, that person would not be criminally responsible for the act." That requested instruction was incomplete in a way that made it an incorrect statement of the law. Under Georgia law, "[v]oluntary intoxication shall not be an excuse for any criminal act or omission." OCGA § 16-3-4(c). See also *Perez v. State*, 309 Ga. 687, 690 & n.2 (2020). That rule has a limited exception for the "extreme situation" where intoxication "has resulted in the alteration of brain function so as to negate intent," but "[e]ven then, the brain function alteration must be more than temporary." Id. at 690 n.2 (citing *Horton v. State*, 258 Ga. 489, 491 (1988)) (internal quotation marks omitted).

7

In other words, voluntary intoxication may serve as a defense only if it causes "permanent brain function alteration" that negates the requisite intent. *Bright v. State*, 265 Ga. 265, 273–74 (1995). Woschula's requested jury instruction omitted this critical limiting language, thus making the instruction an incorrect statement of law, and so the trial court did not err, much less in a clear and obvious way, by failing to give this instruction. See *Simpson*, 289 Ga. at 689. Woschula's claim thus fails.

3. Woschula also asserts that the trial court erred by failing to exclude under Rule 404(b) certain evidence about an incident between himself and a friend, Christina Funk, that occurred years before Clark's death. In particular, the State introduced evidence of an interaction between Woschula and Funk from several years before the murder where Funk called his name from downstairs and Woschula, while high on methamphetamine and holding a gun in each hand, came to the top of the stairs and told Funk not to get any

8

closer to him.[3]

Assuming without deciding that the trial court abused its discretion by not excluding evidence of the incident with Funk under Rule 404(b), any such error was harmless. A non-constitutional error is harmless if it is "highly probable" that it "did not contribute to the verdict." *Wilson v. State*, 322 Ga. 76, 92 (2025) (internal quotation marks omitted). Under this test, when we consider the prejudice of an alleged error, "we review the record de novo, weighing the evidence as we would expect reasonable jurors to have done." *Harris v. State*, 314 Ga. 238, 283–84 (2022) (citing *Heard v. State*, 309 Ga. 76, 90 (2020)). And applying that standard, it was highly probable that admitting the evidence of the incident with Funk did not contribute to the verdict. First, the other evidence of Woschula's guilt was overwhelming. He admitted to the shooting in his statements to law enforcement, he shot Clark multiple times, and when Paul asked him

---

[3] Neither party was confident about exactly when this incident between Woschula and Funk occurred, but regardless of the exact year of this prior incident, the parties agree that it occurred multiple years before Clark's death.

where Clark was Woschula replied that Paul no longer had "a problem." The jury also could have viewed Woschula's attempt to hide Clark's body and flee from the police as evidence of guilt. See *State v. Orr*, 305 Ga. 729, 741 (2019). And a reasonable juror likely would have discounted Woschula's testimony that Clark had tried to sexually assault him because it was not supported by any corroborating evidence aside from Woschula's own self-serving testimony. Compared against this overwhelming evidence of guilt, it was highly probable that the evidence of the incident with Funk did not contribute to the jury's verdict. That incident happened years earlier, involved a different person, and did not result in any harm to anyone involved. Moreover, the fact that Woschula frequently used methamphetamine was not contested. In short, the prejudicial impact of this evidence given its tenuous connection to the crimes at issue was quite low. Because the evidence about the incident with Funk was minimally prejudicial and the properly admitted evidence against Woschula was overwhelming, it is highly probable the evidence he asserts was improper did not contribute to the jury's verdict, so any

error in admitting the evidence about the incident with Funk was harmless. See *Naples v. State*, 308 Ga. 43, 50 n.7 (2020) (assuming that even if admission of other-acts evidence was erroneous, the error was harmless because the admissible evidence against the defendant was "very strong").

4. Woschula contends that the trial court erred by admitting his statements made to law enforcement during interviews on June 20 and 21, 2018, the date of his arrest and the next day. After a *Jackson-Denno* hearing,[4] the trial court issued a written order concluding that Woschula's statements to law enforcement were freely and voluntarily made. The trial court concluded that, based on the totality of the circumstances, the officers' testimony and the audio and video recordings of the interviews show that although Woschula was "emotional" and made some "odd statements," he gave "coherent responses to questions" and provided law enforcement with details about the crime. Woschula now argues that admitting the statements violated his federal due process rights because he was under

---

[4] *Jackson v. Denno*, 378 US 368, 376 (1964).

the influence of methamphetamine at the time, and so the statements were not voluntary. The trial court's conclusion that Woschula's statements were voluntary is reviewed de novo, and we accept the trial court's factual findings unless clearly erroneous. *Quintanar v. State*, 322 Ga. 61, 66 (2025).

The Due Process Clause of the Fourteenth Amendment to the United States Constitution requires "that a confession or inculpatory statement be 'the product of a rational intellect and a free will.'" *State v. Franklin*, 318 Ga. 39, 42 (2024) (quoting *Blackburn v. Alabama*, 361 US 199, 206 (1960)). Under this standard, when evaluating the voluntariness of a statement allegedly made by a defendant while intoxicated or under the influence of drugs, we consider the "totality of the circumstances," including the defendant's "lucidity, coherency, manner of speech, and awareness of circumstances." Id. (quoting *Evans v. State*, 308 Ga. 582, 587 (2020)) (internal quotation marks omitted). But as the United States Supreme Court has explained, "coercive police activity is a necessary predicate" to a conclusion that a statement is not "'voluntary' within the meaning of

the Due Process Clause of the Fourteenth Amendment." Id. (quoting *Colorado v. Connelly*, 479 US 157, 167 (1986)). So, although the mental condition of an intoxicated defendant is relevant to this inquiry (because it may affect his "susceptibility to police coercion," see *Connelly*, 479 US at 165), a statement made by a defendant who is significantly intoxicated or influenced by drugs "is not involuntary as a matter of constitutional due process absent some evidence of coercive conduct by law enforcement in eliciting the statement." Id. at 43 (citing *Connelly*, 479 US at 164–67).

Just so here. Woschula has not even argued, much less shown, that the police engaged in any coercive activity to elicit his statements. Because that showing is a "necessary predicate" for his due process claim, that claim fails. *Franklin*, 318 Ga. at 42–43; *Livingston v. State*, 264 Ga. 402, 408 (1994).

*Judgment affirmed. All the Justices concur.*